912 P.2d 1345

**Jim FISHER, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY STADIUM DISTRICT; Jim Bruner, Mary Rose Wilcox, Tom Rawles, Ed King, Betsey Bayless, as Directors in their official capacity, Defendants–Appellees.**

**No. 1 CA–CV 94–0112.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 5, 1995.

Review Denied March 19, 1996.

Arizona Center for Law in the Public Interest by Timothy M. Hogan, Phoenix, for plaintiff-appellant.

Richard M. Romley, Maricopa County Attorney by Jessica Gifford Funkhouser, Deputy County Attorney, Shawn H. Nau, Deputy County Attorney, Phoenix, for defendants-appellees.

## OPINION

VOSS, Judge.

In this appeal we do not question the validity of the enactment of the sales tax by the Maricopa County Stadium District ("Stadium District") or the use of the tax proceeds to construct the Bank One Ballpark; both may proceed unimpeded by this decision.[1] We do, however, examine the allegation that meetings by the Stadium District[2] were carried out in violation of the Arizona Public Open Meeting Law ("Open Meeting Law"). A.R.S. §§ 38–431 to 431.09 (1985 & Supp. 1994).

---

1. Appellant's reply brief clearly states that "Appellant does not seek ... to invalidate the Appellees' decision to approve the construction of a baseball stadium or the tax to support it."' Appellant's Reply Brief at 3. Appellant seeks only to establish a violation of the Open Meeting Law and recover statutory damages and attorney's fees. Moreover, because it is clear from the material provided this court that no legal action concerning the sales tax was taken in the executive sessions, and because the sales tax was approved by a public vote of the Stadium District, the tax cannot be invalidated by court order. See Ariz.Rev.Stat.Ann. ("A.R.S.") § 38–431.05(A) (1985).

2. The Stadium District was established pursuant to A.R.S. sections 48–4201 to 48–4255 (Supp. 1994), and is authorized to:

    construct, finance, furnish, maintain, operate, market, and promote the use of a major league baseball franchise stadium and other structures, utilities, roads, parking areas or other buildings necessary for the full use of the stadium for sports and other purposes and do all things necessary or convenient to accomplish those purposes.

    A.R.S. § 48–4204(A).

    The Stadium District's board of directors consisted of members of the County Board of Supervisors.

## FACTUAL AND PROCEDURAL BACKGROUND

When a group of private investors ("Owners Group") inquired with Maricopa County officials about public financing for the construction of a major league baseball stadium, the Stadium District was created as the public body to evaluate and eventually vote on any stadium proposal. The Stadium District delegated the negotiations to county attorneys who met privately with the Owners Group. Before the scheduled vote on whether to approve the stadium deal, the Stadium District scheduled four closed-door executive sessions, the stated purpose of which was to confer with the negotiating attorneys to "receive legal advice and give direction to County Counsel regarding legal issues relating to a professional baseball stadium." Plaintiff–Appellant's Complaint at 3.

Jim Fisher ("Appellant") challenged the legality of these executive sessions by filing a Complaint in superior court on December 3, 1993. Appellant claimed that several executive sessions scheduled by the Stadium District were held in violation of the Open Meeting Law. A.R.S. § 38–431.01(A).

The Stadium District filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. The hearing on the motion was held on December 20, 1993. During the hearing, the trial judge ordered that the Stadium District's executive session minutes be turned over to the court for *in camera* review. That same day, the judge entered an order granting the Stadium District's Motion to Dismiss. The judge held that Appellant did not meet his burden of proving that there was a "reasonable basis for a factual belief ... that the statute was violated...."

Appellant filed a Petition for Special Action on December 23, 1993, but this court declined to exercise jurisdiction. Final judgment was entered on January 5, 1994, and Appellant filed a timely Notice of Appeal on January 19, 1994. We have jurisdiction over this appeal pursuant to A.R.S. sections 12–120.21 (1992) and 12–2101(B) (1994).

## ISSUES

The central issue of this appeal, whether the trial judge erred in dismissing Appellant's case, requires us to decide three questions. First, is this appeal moot? Second, did the trial judge err in dismissing Appellant's case for failure to state a claim? To answer this, we must consider both whether Appellant's Complaint sufficiently alleged a claim and whether the trial judge applied the correct burden of proof. Third, did the trial judge err in granting summary judgment after he read and considered the executive session minutes? To answer this, we must consider whether the trial judge applied the correct definition of "legal advice."

## I. MOOTNESS

The Stadium District argues that, because the sales tax has been enacted, the appeal no longer presents a controversy and is, therefore, moot. Appellant responds that he does not seek to invalidate the tax, but instead seeks statutory damages and attorney's fees pursuant to the Open Meeting Law. *See* A.R.S. § 38–431.07(A). The issues of statutory damages and attorney's fees are properly preserved on appeal; therefore, this appeal is not moot.

Furthermore, even if Appellant's claim for statutory damages was not enough to preserve all of the issues raised, we note that the mootness doctrine is not mandated by the Arizona Constitution, but is solely a discretionary policy of judicial restraint. *Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 562–63, 789 P.2d 1061, 1063–64 (1990). Arizona courts may consider an appeal that has "become moot when significant questions of public importance are presented and are likely to recur." *Id.* at 563, 789 P.2d at 1064.

To determine whether the issue is of sufficient "public importance," we consider the impact of the alleged violation; whether the issue is likely to recur; and whether the issue is one that will evade review in the

future. *Id.; KPNX Broadcasting Co. v. Superior Court,* 139 Ariz. 246, 250, 678 P.2d 431, 435 (1984) (holding that an issue that will evade review is not subject to the mootness doctrine); *see also generally Municipality of Anchorage v. Anchorage Daily News,* 794 P.2d 584, 588 (Alaska 1990) (holding that the mootness doctrine is a product of judicial policy and not constitutional mandate; and explaining the exceptions to the doctrine).

The Stadium District reasons that the issues raised by Appellant will not recur because "construction of more than one major league baseball stadium within Maricopa County is very unlikely." Appellee's Answering Brief at 7. The Stadium District mischaracterizes the issue in a hyper-specific manner. The issue likely to recur is not the building of a second stadium but the future use of the "legal advice" exemption to justify executive sessions and the misallocation of the burden of proof.

These issues are fundamentally significant because they will define just how "open" Arizona's Open Meeting Law should be. If exemptions to the law are left unexamined by the judiciary, they could handily be expanded until the purpose of the law is frustrated. Because we also find that these issues are likely to recur and that timely, unpressured review of these issues is elusive, we exercise our discretion to address the merits of this appeal.

## II. SUMMARY DISMISSAL OF APPELLANT'S CASE

The trial judge granted the Stadium District's Motion to Dismiss because Appellant did not satisfy his burden of proof. However, the trial judge also states later in his order that he considered other evidence that also warranted dismissal. We will consider whether the trial judge's judgment of dismissal can be upheld as either a motion to dismiss or as a summary judgment.

### A. Motion to Dismiss for Failure to State a Claim

■ When a trial judge grants a motion to dismiss, we will affirm only if the facts

pled by Appellant—and assumed by us to be true—fail to state a claim upon which relief can be granted. *Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n,* 177 Ariz. 256, 258, 866 P.2d 1342, 1344 (1994). The Stadium District argues, and the trial judge agreed, that Appellant's Complaint failed to state a valid claim because it did not show a "factual basis to support a belief that a violation has occurred." Dec. 20, 1993, minute order. The Stadium District contends that Appellant's challenge is "baseless" and therefore failed to properly and specifically allege a violation of the Open Meeting Law.

Appellant's Complaint alleged that "[p]ublic accounts of these meetings indicate that they are being conducted in executive session to preserve the confidentiality of the negotiations between the defendants and the Owners Group and 'to make sure we get a good deal for the taxpayers.'" Appellant's Complaint at 3–4. The quote was attributed to a Stadium District member and reported in the Phoenix Gazette. The Complaint summarizes its concern that the news accounts

> indicate that something more than legal advice is being discussed in these executive sessions and that their true purpose is to provide the defendants with reports as to the status of negotiations with the Owners' Group and for counsel to receive direction from the defendants as to both legal and non-legal matters.

*Id.* at 4. The Complaint concludes that the "plaintiff has a legitimate concern that violations of the Open Meeting law have occurred or will occur in the future. The defendants have the burden of proving that their actions fall within an executive session exception to the Open Meeting law." *Id.* We agree that these allegations are sufficient to support a claim challenging the Stadium District's executive sessions.

■ The trial judge also stated that he was granting the Stadium District's Motion to Dismiss because Appellant failed to meet his burden of proof. While it is true that the burden of proving a violation of the Open Meeting Law generally rests on the plaintiff

asserting the violation, this is not the case for challenges to executive sessions. *City of Prescott v. Town of Chino Valley,* 166 Ariz. 480, 486 n. 4, 803 P.2d 891, 897 n. 4 (1990). In footnote 4, the supreme court stated:

> The trial court, in determining that Prescott did not meet its burden of proving that unlawful discussions took place, was referring to discussions generally and not to the executive sessions at issue in our review of this case. We agree with the trial court that the burden of proving a violation of the open meeting law generally is on the party asserting the violation.
>
> We do not mean to imply, however, that the party challenging an *executive session* has the burden of proving that an improper discussion took place at the closed meeting. To the contrary, we believe that the public body has the burden of proving that its actions fall within an executive session exception to the open meeting law.[3]

(Emphasis in original.)

The supreme court relied on the following cases to support its conclusion that the plaintiff should not bear the burden of proof in a challenge of an executive session: *Common Council v. Peru Daily Tribune, Inc.,* 440 N.E.2d 726, 729 (N.C.Ct.App.1982); *News and Observer Publishing Co. v. Interim Board of Education,* 29 N.C.App. 37, 223 S.E.2d 580, 586–87 (1982); *News–Journal Co. v. McLaughlin,* 377 A.2d 358, 362 (Del. Ch.1977) (holding that "the burden should not be cast upon one asserting a violation of it to establish what the public body actually did and said at a meeting from which he was excluded in order to obtain relief").

The conclusion by the other states that have considered the burden of proof issue— in either open meeting law cases or the analogous freedom of information law cases— supports the supreme court's statement in footnote 4. In the cases involving freedom of information or public records, state courts overwhelmingly favor shifting the burden of proof to the defendant to show, specifically, why the records should not be made public. *See Cox Arizona Publications v. Collins,* 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993) (burden on public official resisting disclosure of public records "to overcome the legal presumption favoring disclosure"); *Globe Newspaper Co. v. Police Comm'r of Boston,* 419 Mass. 852, 648 N.E.2d 419, 424 (1995) ("a government agency which refuses to comply with an otherwise proper request for disclosure has the burden of proving 'with specificity' that the information requested is within one of nine statutory exemptions to disclosure"). The court in *Globe Newspaper* further held that under the Massachusetts public records law, "there exists 'a presumption that the record sought is public.'" *Id.*

■ Discussing the Judicial Nominating Commission's burden of proof, a Delaware court held that the custodian of records bears the burden of proof to justify the denial of access to records. *Guy v. Judicial Nominating Comm'n,* 659 A.2d 777, 781 (Del.Super.Ct.1995). In *Guy,* the court further explained that "a public body that moves for summary judgment on its affirmative defense of exemption is required to offer affidavits or other material sufficient to show that it is factually impossible for the plaintiff to defeat that defense." *Id.*

The Michigan Court of Appeals held that:

> [O]nce a request has been made under the FOIA and denied by defendant, the burden falls upon defendant to show a viable defense.... Because the defendant controls the material requested, it is difficult for the plaintiff in an FOIA case to confidently assert circumstances and facts in its favor. Accordingly, the burdens of pleading and proof are allocated to rectify this disadvantage.

*Detroit News, Inc. v. City of Detroit,* 185 Mich.App. 296, 460 N.W.2d 312, 314 (1990);

---

**3.** The trial judge rejected footnote 4 when he analyzed Appellant's burden. "[F]ootnote 4 says the burden of proving the right to the exception is on the public body and the burden is not on the Plaintiff to prove the violation of the statute. In the opinion of the Court, that is not a reasonable interpretation of the statute." Dec. 20, 1993, minute order.

*see also Black Hills Alliance v. United States Forest Service*, 603 F.Supp. 117, 118–19 (W.D.S.D.1984) (holding that once a law suit is filed "challenging agency action in withholding particular information, 'the burden is on the agency to sustain its action' "). The agency claiming an exemption from disclosure must "provide specific justifications in support of its claim; conclusory allegations are insufficient." (citing *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

We agree with the Arizona Supreme Court[4] and the state and federal courts cited above. Requiring a plaintiff to plead and prove specific facts regarding alleged violations that are taking place in secret is a circular impossibility. Appellant saw the indications in reports and news stories concerning the reportedly secret negotiations. He brought this concern to the attention of the Stadium District. When nothing happened, he filed a Complaint in superior court alleging his belief and the basis of his suspicion that the executive sessions violated the Open Meeting Law. That is enough to state a claim challenging the legality of an executive session.

■ Therefore, we hold that after a plaintiff, who is challenging an executive session under the Open Meeting Law, has filed a complaint alleging facts from which a reasonable inference may be drawn supporting an Open Meeting Law violation, the burden shifts to the defendant to prove that an affirmative defense or exemption should permit a closed-door executive session. The trial judge thus applied the wrong burden of proof to Appellant's Complaint. Dismissal on this basis was error.

### B. Summary Judgment

#### 1. Treating Motion to Dismiss as Summary Judgment

■ On a motion to dismiss for failure to state a claim, if evidence is presented to the trial judge and not excluded, the motion is properly treated as one for summary judgment. *Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 519–20, 591 P.2d 1005, 1007–08 (App.1979). In this case, the trial judge wrote at the end of his December 20, 1993, minute order that "[t]he Court has examined [the minutes] and finds that there is no violation of the 'open-meeting law' indicated." Therefore, even though the trial judge, in the same minute order, granted "the Motion to Dismiss," he also granted summary judgment. *See id.* However, he based the summary judgment portion of the order on a basis different than his dismissal. The dismissal was based on the burden of proof and the insufficiency of the allegations in the Complaint; the summary judgment explanation in the minute order related to whether the executive session minutes violated the Open Meeting Law by exceeding the scope of "legal advice." Therefore, even though granting the Motion to Dismiss was error, we will still uphold the dismissal if it can be justified as a correct summary judgment.

#### 2. Standard of review

■ Reviewing the dismissal as a summary judgment, we will reverse if we find that, after reviewing the entire record, a disputed issue of fact existed that would allow reasonable people to disagree with the conclusion advanced by the proponent of the motion. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We must review the entire record, including the sealed minutes that were transmitted to this court on appeal. *See Giovanelli v. First Federal Sav. and Loan Ass'n*, 120 Ariz. 577, 581, 587 P.2d 763, 767 (App.1978).

#### 3. "Legal advice"

In 1962, the legislature passed Arizona's Open Meeting Law. The enactment was an effort to ensure that the public could attend

---

**4.** Although footnote 4 of *City of Prescott* could be characterized as dictum, we think it is reasoned and considered dictum, worthy of adoption as the law in Arizona. The Arizona Supreme Court expressed its opinion that the public body "has the burden of proving that its actions fall within an executive session exception to the open meeting law." 166 Ariz. at 486 n. 4, 803 P.2d at 897 n. 4.

and monitor the meetings of all public bodies.[5] A.R.S. §§ 38–431 to 431.09. The Open Meeting Law broadly requires that: "All meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings." A.R.S. § 38–431.01(A).

A.R.S. section 38–431.03(A)(3) provides an exemption to the Open Meeting Law for any "[d]iscussion or consultation for legal advice with the attorney or attorneys of the public body."[6] In determining whether summary judgment was proper, this court must consider whether the trial judge applied the correct definition of "legal advice."

The trial judge determined that "legal advice ... must mean ... an *unrestricted* discussion between attorneys and clients leading to the lawyers being able to carry out the clients legal needs, even if mixed in those needs are the necessities of negotiating complex economic development contracts." Dec. 20, 1993, minute order. (Emphasis added.) The trial judge's definition is too broad.

▮▮▮▮ The most fundamental rule of statutory construction requires us to determine the intent of the legislature. *Sandblom v. Corbin*, 125 Ariz. 178, 182, 608 P.2d 317, 321 (App.1980). We determine the intent of the legislature first by giving the natural meaning to the statutory language and by construing the language in context of other related statutes. *Id.* at 182–83, 608 P.2d at 321–22. In this appeal, we are assisted by the legislature's stated declaration of A.R.S.

section 38–431.09 that requires this court to "take into account the policy of this article and ... construe any provision of this article in favor of open and public meetings." *See also City of Prescott*, 166 Ariz. at 483, 803 P.2d at 894 (quoting A.R.S. § 38–431.09).

The Arizona Supreme Court has twice quoted with approval[7] from *City of Lexington v. Davis*, 310 Ky. 751, 221 S.W.2d 659, 661 (1949):

> [A] public meeting presupposes the right of the public freely to attend such meetings with the concurrent right freely to express any approval or disapproval of any action or course about to be taken. Anything which tends to "cabin, crib or confine" the public in this respect would be destructive of the right. ...

Other states also recognize that exceptions to open meeting or "sunshine" statutes should be narrowly construed in favor of requiring public meetings. *Common Council*, 440 N.E.2d at 729 (holding that Indiana's Open Door Law should be construed consistent with the legislative purpose favoring open meetings); *News and Observer Publishing*, 223 S.E.2d at 587 (exceptions to open meetings law should "be strictly construed"); *Illinois News Broadcasters Ass'n v. Springfield*, 22 Ill.App.3d 226, 317 N.E.2d 288, 290 (1974) (exceptions should be "narrowly construed"); *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753, 755 (1968) (holding that the state Freedom of Information Act ("FOIA") must be interpreted to achieve its purpose of guaranteeing public meetings); *Town of Palm Beach v. Gradison*, 296 So.2d 473, 477

---

**5.** Similar efforts have been undertaken in all fifty states and the District of Columbia. Teresa D. Pupillo, *The Changing Weather Forecast: Government in the Sunshine in the 1990's—An Analysis of State Sunshine Laws*, 71 Wash.U.L.Q. 1165, 1165 (1993). In support of public meetings, it has been accurately stated that "[b]ecause of the tremendous increases in governmental agencies and the great impact that their actions have on the individual, it is important that individuals have knowledge of the doings of these bodies." *Pape v. McKinney*, 170 Conn. 588, 368 A.2d 28, 34 (1976) (Bogdanski, J., dissenting).

**6.** The Stadium District "is a tax levying public improvement district....," A.R.S. § 48–

4202(D), and because the board of directors consists of elected officials, the Stadium District is a "public body" subject to the Open Meeting Law. A.R.S. section 38–431(5) ("public body" includes "without limitation all corporations and other instrumentalities whose board of directors are appointed or elected by the state or political subdivision").

**7.** *Washington Sch. Dist. v. Superior Court*, 112 Ariz. 335, 336, 541 P.2d 1137, 1138 (1975); *Town of Paradise Valley v. Acker*, 100 Ariz. 62, 64, 411 P.2d 168, 169 (1966).

(Fla.1974) (holding that the Florida statute should be construed so as to "frustrate all evasive devices").[8]

■ We must take care not to interpret "legal advice" so broadly as to frustrate the Open Meeting Law by allowing public bodies to delegate responsibilities to attorneys and then cloak negotiations and executive sessions in secrecy by having the attorneys present. The presence of an attorney "at an executive session cannot be used to circumvent the open meeting law requirements." *City of Prescott*, 166 Ariz. at 485, 803 P.2d at 896 (citing, *e.g.*, *Jefferson County Bd. of Educ. v. Courier–Journal*, 551 S.W.2d 25, 28 (Ky.Ct.App.1977) ("nothing said herein should be construed as to mean that anytime the public agency has its attorney present that it can go into closed session")).

■ In *City of Prescott*, the Arizona Supreme Court held that "legal advice" encompasses advice given to the public body "regarding the legal ramifications of the facts and information given to him and the legality of the proposed legislation." *Id.* Further, a public body may meet with its attorneys in closed-door executive session if the discussion is related to: "the legal propriety, phrasing, drafting, and validity of proposed legislation, including its meanings, legal scope, possible legal challenges, and counsels' views regarding constitutionality, construction, and the like." *Id.* While the supreme court did not purport to provide an exclusive list of all forms of legal advice, the supreme court did make it clear what type of discussion is proscribed. After listing the areas indicative of legal advice the court stated: "However, once the members of the public body commence any discussion regarding the merits of enacting the legislation or what action to take based upon the attorneys' advice, the discussion moves beyond the realm of legal advice and must be open to the public." *Id.*

■ We concede that the issues in *City of Prescott* and here are different. *City of Prescott* involved tax legislation while the Stadium District was involved in the negotiation of an agreement mixing taxpayer dollars and a private commercial enterprise. Nevertheless, the principles are the same. We see little difference between private discussions about the merits of enacting legislation and private discussions about the merits of entering into a commercial agreement. Nor is there any real difference between private discussions about what action to take after receiving legal advice on legislation and private discussions about what action to take after receiving legal advice concerning the legal ramifications of a commercial agreement. It is the debate over what action to take, including the pros and cons and policy implications, of competing alternative courses of action, that must take place in public. It is clear from our previous discussion that our charge is to promote openness in government, not to expand exceptions which could be used to obviate the rule.

Therefore, we find that the trial judge erred by failing to adopt the Arizona Supreme Court's definition in ruling on the Motion for Summary Judgment. On remand, the trial judge must consider the executive session minutes, and any other relevant evidence, and determine whether the Stadium District violated the Open Meeting Law by going beyond the description of "legal advice" contained in *City of Prescott*. The Stadium District noticed its meetings for the sole purpose of "receiv[ing] legal advice and giv[ing] direction to County Counsel regarding legal issues . . . ." The Stadium District should be held strictly to its stated purpose.

### III.   Conclusion

We conclude that dismissal by the trial judge was error. Appellant did allege sufficient facts in his Complaint to support a

---

**8.** In the analogous situation involving federal Freedom of Information Act challenges, federal courts have held that the nine exemptions to disclosure of government records must be "narrowly construed." *Black Hills Alliance*, 603 F.Supp. at 118; *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (the exemptions are "explicitly made exclusive . . . and must be narrowly construed" (citations omitted)).

reasonable inference that an illegal executive session had occurred or would occur. Also, after Appellant alleged in his Complaint his reasonable belief that a violation had occurred or would occur, the burden of proof shifted to the Appellees to submit evidence justifying the executive session exemption.

We therefore reverse the summary dismissal and remand for further proceedings consistent with this opinion.

FIDEL and TOCI, JJ., concur.