**136 Nev., Advance Opinion 34**
IN THE SUPREME COURT OF THE STATE OF NEVADA

STATE OF NEVADA EX REL. NICOLE J. CANNIZZARO, IN HER OFFICIAL CAPACITY AS SENATE MAJORITY LEADER OF THE SENATE OF THE STATE OF NEVADA; CLAIRE J. CLIFT, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE SENATE OF THE STATE OF NEVADA; LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION, IN ITS OFFICIAL CAPACITY AS THE LEGAL AGENCY OF THE LEGISLATIVE DEPARTMENT OF THE STATE OF NEVADA; BRENDA J. ERDOES, ESQ., IN HER OFFICIAL CAPACITY AS LEGISLATIVE COUNSEL AND CHIEF OF THE LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION, AND IN HER PROFESSIONAL CAPACITY AS AN ATTORNEY AND LICENSED MEMBER OF THE STATE BAR OF NEVADA; AND KEVIN C. POWERS, ESQ., IN HIS OFFICIAL CAPACITY AS CHIEF LITIGATION COUNSEL OF THE LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION, AND IN HIS PROFESSIONAL CAPACITY AS AN ATTORNEY AND LICENSED MEMBER OF THE STATE BAR OF NEVADA,
Petitioners,
vs.
THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CARSON CITY; AND THE HONORABLE JAMES TODD RUSSELL, DISTRICT JUDGE,
Respondents,

No. 80313

**FILED**

JUN 26 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

 

and
JAMES A. SETTELMEYER; JOSEPH P. HARDY; HEIDI SEEVERS GANSERT; SCOTT T. HAMMOND; PETE GOICOECHEA; BEN KIECKHEFER; IRA D. HANSEN; AND KEITH F. PICKARD, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE SENATE OF THE STATE OF NEVADA AND INDIVIDUALLY,
Real Parties in Interest.

Original petition for a writ of mandamus challenging a district court order disqualifying counsel from representing certain defendants in a declaratory relief action concerning the passage of two bills in the state senate.

*Petition granted.*

Legislative Counsel Bureau, Legal Division, and Brenda J. Erdoes, Legislative Counsel, and Kevin C. Powers, Chief Litigation Counsel, Carson City,
for Petitioners.

Allison MacKenzie, Ltd., and Karen A. Peterson and Justin M. Townsend, Carson City,
for Real Parties in Interest.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CADISH, J.:

Nevada Rule of Professional Conduct 1.7 prohibits a lawyer from representing a client if a concurrent conflict of interest exists with another client. The rule applies when "[t]he representation of one client will be directly adverse to another client." In this proceeding, the district court determined that the Legislative Counsel Bureau Legal Division's (LCB Legal) representation of two defendants in the underlying action, Senate Majority Leader Nicole Cannizzaro and Senate Secretary Claire Clift, is directly adverse to another of its clients—the eight Nevada State Senators who are plaintiffs in that action (the senator plaintiffs). The district court therefore granted the senator plaintiffs' motion to disqualify LCB Legal from representing Senator Cannizzaro and Secretary Clift.

Although the district court concluded that LCB Legal has an ongoing attorney-client relationship with the senator plaintiffs, the circumstances here cut against that conclusion. LCB Legal's client is the Legislature, and it represents individual legislators only in their official capacities as constituent members of the Legislature acting on the Legislature's behalf. The senator plaintiffs sued Senator Cannizzaro and Secretary Clift in their official capacities for actions taken on behalf of the Legislature related to the passage of two senate bills, and LCB Legal's defense of Senator Cannizzaro and Secretary Clift as to those legislative acts therefore is ancillary to its defense of the bills themselves. But in challenging the legislation, the senator plaintiffs are not similarly acting on the Legislature's behalf, and thus they are not considered LCB Legal's client in this situation. Accordingly, we agree with petitioners that the senator plaintiffs lack standing to move to disqualify LCB Legal because they do not

 

have an attorney-client relationship with LCB Legal other than in their roles as duly authorized members of the Legislature acting on the Legislature's behalf. We therefore grant the petition for a writ of mandamus.

## DISCUSSION

Eight Nevada State Senators and several business entities filed a complaint for declaratory and injunctive relief, naming various executive branch officials and agencies and petitioners, Senate Majority Leader Nicole J. Cannizzaro and Senate Secretary Claire J. Clift (the legislative defendants) in their official capacities. The complaint alleges that Senate Bills 542 and 551 were unconstitutionally approved with a simple majority vote in the Senate instead of a two-thirds' affirmative vote. LCB Legal filed an answer to the complaint on behalf of the legislative defendants. The senator plaintiffs moved to disqualify LCB Legal, and the district court granted the motion. In concluding that LCB Legal had a disqualifying conflict under RPC 1.7, the district court relied on the fact that LCB Legal provided a legal opinion during the legislative session that addressed the vote requirement issue for the benefit of both Senator Cannizzaro and plaintiff Senator James Settelmeyer.[1] Senator Cannizzaro, Secretary Clift, and LCB Legal and two of its attorneys, Brenda Erdoes and Kevin Powers, have petitioned for a writ of mandamus, challenging the order.[2]

---

[1]At the same time, the district court entered an order granting the Legislature's motion to intervene and allowing LCB Legal to represent the Legislature, as a whole, adverse to the senator plaintiffs.

[2]Petitioners' February 6, 2020, motion to supplement the record regarding jurisdictional issues is granted. The clerk of this court shall detach the supplement from the motion and file it separately. As petitioners point out, and the supplement supports, the Legislative Commission

 

Petitioners seek a writ of mandamus because an order disqualifying counsel is not immediately appealable. *Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 123 Nev. 44, 49, 152 P.3d 737, 740 (2007) ("This court has consistently held that mandamus is the appropriate vehicle for challenging orders that disqualify counsel."). Although the district court has broad discretion in attorney disqualification matters, *id.* at 54, 152 P.3d at 743, when the facts are undisputed and the appropriate standard for disqualification is based on interpretation of a disciplinary rule, de novo review applies, *Marquis & Aurbach v. Eighth Judicial Dist. Court*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006) ("This court reviews a district court's interpretation of a statute or court rule . . . de novo, even in the context of a writ petition."); *see Dynamic 3D Geosolutions LLC v. Schlumberger Ltd.*, 837 F.3d 1280, 1284 (Fed. Cir. 2016) (observing that the standard of review for an order resolving a motion to disqualify "is for abuse of discretion, with the underlying factual findings reviewed for clear error and the interpretation of the relevant rules of attorney conduct reviewed *de novo*"); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (observing that "in the event an appropriate standard for disqualification is based on a state's disciplinary rules, a court of appeals should consider the district court's interpretation of [those] rules as an interpretation of law, subject essentially to *de novo* consideration").

"The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself." RPC 1.0A(a). Pursuant to RPC 1.7, "a lawyer shall

---

authorized this mandamus action at its December 30, 2019, public meeting. We therefore reject the senator plaintiffs' contention that this petition may be defective.

not represent a client if the representation involves a concurrent conflict of interest." The rule essentially precludes an attorney from taking a position that is adverse to another client's interests. RPC 1.7(a)(1). "The party seeking to disqualify [an attorney] bears the burden of establishing that it has standing to do so." *Liapis v. Second Judicial Dist. Court*, 128 Nev. 414, 420, 282 P.3d 733, 737 (2012). "The general rule is that only a former or current client has standing to bring a motion to disqualify counsel on the basis of a conflict of interest." *Id.* (quoting Model Rules of Prof'l Conduct R. 1.7 annot., which discusses the model rule identical to RPC 1.7).

The Legislature has the right to choose legal counsel with specialized knowledge and experience in protecting the Legislature's official interests in litigation; however, that right "must yield to ethical considerations that affect the fundamental principles of [the] judicial process." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 377-78 (Cal. 1999) (observing that a motion to disqualify a party's counsel may implicate several important interests, including a client's right to choose legal counsel, the expense of obtaining substitute counsel, and the possibility that such a motion was brought for tactical purposes). LCB Legal represents the Legislature as an organizational client "acting through its duly authorized constituents," RPC 1.13(a), and its attorney-client relationship is with the Legislature, RPC 1.13(f) (providing that "the lawyer's client is the organization rather than the constituent"). Under the facts and circumstances of this case, we conclude that the senator plaintiffs lack standing to seek LCB Legal's disqualification because they do not have an attorney-client relationship with LCB Legal other than as duly authorized constituent members of the Legislature acting on the Legislature's behalf. The senator plaintiffs are suing Senator Cannizzaro

and Secretary Clift in their official capacities for acts taken on behalf of the Legislature as a whole. LCB Legal does not have a disqualifying conflict of interest that prevents it from defending such a lawsuit because its only client is the Legislature acting through its duly authorized constituents, and LCB Legal only represents individual senators to the extent they are acting on the Legislature's behalf.

Other courts have concluded similarly. In *Ward v. Superior Court*, a California Court of Appeal concluded that Los Angeles county counsel represented the county as a governmental entity and not its individual officers, and thus counsel did not have a disqualifying attorney-client relationship with the county assessor as an individual officer. 138 Cal. Rptr. 532, 533-38 (Ct. App. 1977). Therefore, the county attorney was not disqualified by a conflict of interest from representing county commissioner board members who were sued in their official capacities by the county assessor in his individual and taxpayer capacities. *Id.*

Similarly, in *Cole v. Ruidoso Municipal Schools*, the Tenth Circuit Court of Appeals held that a public school principal did not have a separate attorney-client relationship with the school district's attorneys, even though she had consulted with those attorneys on "sensitive personal issues" and acted on the attorneys' advice. 43 F.3d 1373, 1384 (10th Cir. 1994). The court concluded that the principal's belief that she had a separate attorney-client relationship was not reasonable because "she consulted the [school district's attorneys] only for the purpose of carrying out her duties as principal." *Id.* The court thus concluded that the school district's attorney was not disqualified from representing the school district in the principal's lawsuit against it. *Id.* at 1385; *see also Handverger v. City of Winooski*, 38 A.3d 1158, 1160-61 (Vt. 2011) (holding that a city manager

did not have an attorney-client relationship with the city attorney individually or in any capacity other than as city manager because "[a]n organization's lawyer, such as a city attorney or corporate counsel, works only for its constituents, including its employees and officials, in order to serve the organization, not to serve those individuals personally"); *Salt Lake Cty. Comm'n v. Salt Lake Cty. Att'y*, 985 P.2d 899, 905 (Utah 1999) (denying disqualification and relying on Utah's counterpart to RPC 1.13 in holding that "[t]he County Attorney has an attorney-client relationship only with the County as an entity, not with the Commission or the individual Commissioners apart from the entity on behalf of which they act").

The senator plaintiffs argue that *Ward* is distinguishable because there the court determined that the county attorney had not obtained confidential information about the assessor through his prior representation of the assessor. *See Ward*, 138 Cal. Rptr. at 535, 537-39. But the record here does not support that any confidential information was disclosed to LCB Legal regarding this litigation challenging the constitutionality of two senate bills,[3] where both the senate majority and minority leaders requested an opinion from LCB Legal addressing that legal issue. Although the senator plaintiffs have a right to be free from

---

[3]In their brief, the senator plaintiffs asserted that LCB Legal "does obtain confidential information about and from individual legislators," but nothing in the record supports that any such information was disclosed here. Senator Settelmeyer's affidavit, which was attached to the senator plaintiffs' reply to the legislative defendants' opposition to the motion to disqualify, states that he had "several conversations with LCB Legal about the LCB Opinion issued on May 8, 2019," but nothing in the affidavit supports that the communications Senator Settelmeyer had with LCB Legal would be deemed confidential or privileged because they concerned a legal opinion regarding legislation, not an issue personal to the Senator.

inadvertent disclosure of confidential information, nothing in the record supports that such information was provided to LCB Legal such that it could be disclosed.

The senator plaintiffs also argue that *Ward*, *Cole*, and the other cases are distinguishable because the plaintiffs there sued in their individual and taxpayer capacities, whereas here the senator plaintiffs are suing in their official capacities. We are not persuaded that such a distinction matters here. The senator plaintiffs are not acting on behalf of the Legislature as contemplated by RPC 1.13(a) and (g) in challenging legislation that is presumed to be constitutional (the passage of two senate bills), *see Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006) ("Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional."), and actions by the legislative defendants that were undertaken in their official roles on behalf of the Legislature. The senator plaintiffs contend that the senate bills' approval by a simple majority improperly nullified their votes against the bills and deprived them of the power to act, but that contention, while relating to their roles as senators, does not assert a claim on behalf of the Legislature as an entity but instead asserts deprivation of each plaintiff senator's alleged rights.

The senator plaintiffs argue that the statute under which LCB Legal may be authorized to provide legal representation to protect the Legislature's official interests, NRS 218F.720,[4] distinguishes this case from cases confirming that a governmental attorney serves as counsel for the

---

[4]The senator plaintiffs point to NRS 218F.720(6)(c) in particular, which defines the "Legislature" to include any current or former member or officer of the Legislature.

Supreme Court
of
Nevada

(O) 1947A

9

governmental organization, not its individual members. That argument falls flat because a government lawyer's role as counsel for the organization holds true even when an enabling statute authorizes counsel to represent the organization's members. RPC 1.13 (a), (f); *Handverger*, 38 A.3d at 1160-61; *cf.* NRS 218F.720(1) ("When deemed necessary or advisable *to protect the official interests of the Legislature* in any action or proceeding, the Legislative Commission . . . may direct the Legislative Counsel and the Legal Division to appear in, commence, prosecute, defend or intervene in any action or proceeding before any court . . . ." (emphasis added)). When LCB Legal performs its statutory duties to provide legal services such as bill drafts and legal opinions to legislative members, it does so because the members are constituents of the Legislature as an organizational client and for the benefit of the Legislature as an organization. RPC 1.13(a), (f), (g). It thus advises members solely in their official roles as legislators.

LCB Legal is authorized to represent the legislative defendants sued in their official capacities to defend against claims challenging the constitutionality of legislation and to protect the institutional interests of its organizational client, the Legislature. The district court characterized LCB Legal's representation as "pick[ing] sides," but that characterization is unfair and unsupported, and the senator plaintiffs acknowledged at oral argument that nothing in the record supports that LCB picked sides or chose to represent Senator Cannizzaro and Secretary Clift. LCB Legal serves as nonpartisan legal counsel for the Legislature acting through its duly authorized constituents. But the senator plaintiffs are not acting on behalf of the Legislature when they sue other legislative members in their official capacities in order to challenge the validity of legislation that the law presumes to be constitutional. Furthermore, LCB Legal is not

authorized to advocate against such legislation or official legislative acts, and thus it did not "pick sides." As counsel for the senator plaintiffs acknowledged at oral argument, LCB Legal cannot take a position contrary to the Legislature, and thus it could not represent the senator plaintiffs in the underlying litigation even if Senator Cannizzaro and Secretary Clift had not been named as defendants. Its representation of the legislative defendants likewise does not damage its neutrality, as defending a bill's constitutionality is a public, nonpartisan function, and pursuant to NRS 218F.720, LCB Legal would defend such a bill regardless of which political party is in the majority. The basis for LCB Legal's legal opinion was not political, and counsel for the senator plaintiffs acknowledged that there was nothing improper about LCB Legal providing a legal opinion to both the majority and minority leaders during the legislative session. Moreover, nothing in the record, briefs, or arguments suggests that LCB Legal cannot continue to give advice on bill drafts and provide legal opinions to both the minority and majority members of the Legislature in their roles as constituents thereof.

## CONCLUSION

Because the senator plaintiffs failed to establish standing to assert a concurrent conflict of interest on which to ground disqualification, we conclude that the district court erred in applying RPC 1.7 to disqualify LCB Legal.[5] The senator plaintiffs are suing Senator Cannizzaro and Secretary Clift in their official capacities for legislative acts taken on behalf of the Legislature as a whole. The Legislative Commission authorized LCB Legal to defend Senator Cannizzaro and Secretary Clift in their official

---

[5]Based on this conclusion, we need not address petitioners' other arguments against LCB Legal's disqualification.

capacities pursuant to NRS 218F.720(1), and we agree with petitioners that the senator plaintiffs do not have an attorney-client relationship with LCB Legal other than as duly authorized constituent members of the Legislature acting on the Legislature's behalf. LCB Legal's representation of Senator Cannizzaro and Secretary Clift is consistent with that attorney-client relationship. We therefore grant the petition and instruct the clerk of this court to issue a writ of mandamus directing the district court to vacate its order disqualifying LCB Legal.[6]

_____, J.
Cadish

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

---

[6]In light of this opinion, we vacate the stay imposed by our January 10, 2020, order.

SILVER, J., with whom PICKERING, C.J., agrees, dissenting:

I agree with the majority that a petition for a writ of mandamus is the proper vehicle to challenge the district court's order granting the motion to disqualify LCB Legal. I respectfully dissent, however, because NRS 218F.720 does not mandate that LCB Legal provide legal representation in the underlying case and because the district court did not manifestly abuse its discretion in granting the motion to disqualify. I would therefore deny the writ petition's requested relief.

NRS 218F.720(1) provides that, "[w]hen deemed necessary or advisable to protect the official interests of the Legislature in any action or proceeding, the [LCB] . . . *may* direct [LCB Legal] to appear in, commence, prosecute, defend or intervene in any action or proceeding before any court." (Emphasis added.) The use of the word "may" signifies that the LCB has no duty to direct LCB Legal to act in such cases; instead the statutory language is permissive. *See Dornbach v. Tenth Judicial Dist. Court*, 130 Nev. 305, 310, 324 P.3d 369, 373 (2014) (holding that where NRCP 16.1 provides that a "case may be dismissed," the language was permissive (quoting NRCP 16.1(e)(1), (2)). Because the statute is permissive, the statute is not violated if LCB does not direct LCB Legal to, or LCB Legal does not, "appear in, commence, prosecute, defend or intervene" in an action such as the one underlying this writ petition. *See Washington v. State*, 98 Nev. 601, 603-04, 655 P.2d 531, 532 (1982) (holding that a rule's permissive language gave the district court discretion to act). The cases cited by petitioners, where the underlying statutes are mandatory, are therefore not convincing.

Furthermore, this court should only overturn a district court's order disqualifying counsel when the district court has "manifestly abused its discretion" in doing so. *Nev. Yellow Cab Corp. v. Eighth Judicial Dist.*

*Court*, 123 Nev. 44, 49, 152 P.3d 737, 740 (2007). "A manifest abuse of discretion is a clearly erroneous interpretation of the law or a clearly erroneous application of a law or rule." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (internal quotation marks and alteration omitted) (comparing a manifest abuse of discretion to an arbitrary or capricious exercise of discretion). And, as to the factual determination regarding the existence of an attorney-client relationship, *see Waid v. Eighth Judicial Dist. Court*, 121 Nev. 605, 611, 119 P.3d 1219, 1223 (2005) (recognizing that the existence of an attorney-client relationship is a question of fact), this court defers to the district court and will not intercede except when clear error appears, *see Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009) (reviewing a district court's factual findings for clear error).

The district court found that a concurrent conflict of interest exists under Nevada Rule of Professional Conduct (NRPC) 1.7 as to LCB Legal's representation of the legislative defendants in direct opposition to the senator plaintiffs in this case. NRPC 1.7(a) provides "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interest exists if "[t]he representation of one client will be directly adverse to another client." NRPC 1.7(a)(1). "Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." Model Rules Prof'l Conduct r. 1.7 cmt. 6 (Am. Bar Ass'n 2019).

The senator plaintiffs, equally with the legislative defendants, are current clients of LCB Legal. *See* NRS 218D.110; NRS 218F.150; NRS 218F.710(2); NRS 218F.720. LCB Legal acknowledges as much but argues that a "government-lawyer exception" exists that takes its representation of the legislative defendants against the senator plaintiffs outside NRPC 1.7. But this is contrary to NRPC 1.11(d), which states, "[e]xcept as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) Is subject to Rules 1.7 and 1.9." While the statutes just cited authorize LCB Legal to provide legal services to the members of the Nevada Legislature, nowhere do they say LCB Legal can represent one member of the Legislature against another as litigation adversaries.

LCB Legal offers the fallback argument, which the majority accepts, that LCB Legal's client is the Legislature, not its members, except to the extent the members act as "duly authorized constituents" of the Legislature. But whether an organization's attorney is representing the organization, one or more persons within the organization, a person or entity related to the organization, or some combination thereof, "is a question of fact to be determined based on reasonable expectations in the circumstances." Restatement (Third) of the Law Governing Lawyers § 14 cmt. f (2000) (recognizing that while an "organization's structure and organic law determine whether a particular agent has authority to retain and direct the [organization's] lawyer," who the organizational lawyer represents is a question of fact); *see Nev. Yellow Cab*, 123 Nev. at 49, 152 P.3d at 740. And, as NRPC 1.13(f) makes clear, if a lawyer means to represent an organization to the exclusion of its constituents, the "lawyer shall explain the identity of the client to the constituent and reasonably attempt to ensure that the constituent realizes that the lawyer's client is

the organization rather than the constituent," and, "[i]n cases of multiple representation . . . , the lawyer shall take reasonable steps to ensure that the constituent understands the fact of multiple representation."

The senator plaintiffs supported their motion to disqualify with the affidavit of Senator Settelmeyer and excerpts from the orientation materials LCB Legal gives new legislators. Nothing in the record suggests LCB Legal conveyed to Senator Settelmeyer or the other senator plaintiffs that its representation of them was qualified, such that LCB Legal could later represent other senators against them as litigation adversaries. And, in fact, it appears that LCB Legal undertakes to represent the members of the Legislature unqualifiedly. *See Comm'n on Ethics v. Hansen*, 134 Nev. 304, 305, 419 P.3d 140, 141 (2018) (reciting that LCB Legal offered legal and ethical advice to a legislator to assist him in defending citations the Nevada Department of Wildlife issued against him for placing snare traps too close to the roadway in violation of NRS 503.580). Further, as LCB Legal acknowledged at oral argument, it provides confidential advice to legislative members that it does not share with other legislative members, consistent with NRS 218F.150(1)(b).

In its order, the district court made thorough findings of fact that are supported by the record submitted to this court. Those findings establish that LCB Legal concurrently represents both the senator plaintiffs and the legislative defendants. It thus cannot represent the latter against the former in this case because the representation is directly adverse. The district court's conclusions of law demonstrate neither an erroneous interpretation of the relevant law nor an erroneous application of

that law. Based on this record, I cannot say that the district court manifestly abused its discretion in granting the motion to disqualify LCB Legal.

For the foregoing reasons, I would deny the petition for a writ of mandamus.

_____, J.
Silver

I concur:

_____, C.J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A